Considered by TRUSSELL and LITTLETON.

---

MORRISON, GROSS & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14804.    Promulgated July 21, 1927.

1. Depreciation of a tractor computed at the rate of 33⅓ per cent annually, approved.

2. Where a tractor used in lumber business for hauling logs was stored in 1920 and used in 1921 as a stationary power plant, *held,* that the unextinguished cost was not deductible in 1920.

*Maynard Teall, Esq.,* for the petitioner.
*Henry Ravenel, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency asserted by the respondent for the calendar year 1920, in the amount of $632.66. The entire deficiency arises from the respondent's disallowance as a deduction from gross income for the year 1920 of the amount of $2,470.29 of the total amount of $4,205.44 claimed as depreciation on a tractor owned by the petitioner and used in its business.

The petitioner contends that the amount of $4,205.44 is a proper deduction on account of loss of useful value of the tractor, if not allowable as depreciation.

FINDINGS OF FACT.

The business of this petitioner is, and ever since the beginning of 1920 has been, lumber manufacturing. Early in 1920, the petitioner was engaged in a cutting and sawing operation in the State of West Virginia. The railroad station nearest the site of said operation was Beverly, W. Va., eight miles away. At that time the market

price of lumber was very high and the taxpayer then purchased, for the sum of $5,205.44, a tractor to be used for hauling the newly cut lumber from the site of said cutting and sawing operations to said railroad station.   During the period of high prices the tractor was in constant use hauling lumber between the points aforesaid and over rough dirt roads.   During a period of seven months, owing to said use and notwithstanding high repair and maintenance charges of approximately $2,000 during said period, the tractor deteriorated very rapidly.   By the fall of 1920, the market price of lumber had substantially declined, and that fact, together with said high cost of operating said tractor and the deteriorated condition thereof, caused the petitioner to cease using it as such.   It then became impracticable to use it because of (1) the lower selling price of lumber, (2) the high cost of operation due to the tractor's worn condition and the physical conditions surrounding operation.   In 1922, while the tractor was in the same condition as when the petitioner ceased to use it, a representative of the manufacturer after observing the tractor, stated to the petitioner that the expenditure of $1,100 would be necessary to put it in proper operating condition.   On ceasing to use said tractor as such, the petitioner endeavored to sell it for $1,000, but being unable to obtain this price the petitioner subsequently offered it for as low as $800.   All efforts to sell were unsuccessful until 1926, when sale was effected for $765.   This sale was made to a lumberman handling black walnut, which is an expensive lumber and yields a large margin of profit.

Subsequent to the expiration of said seven-month period, to wit, the fall of 1920, the tractor was placed under shelter against the weather and was not again used by the petitioner as such, but the motor without being removed from the tractor was used on two occasions in 1921 as a stationary power unit to drive a hoist, one occasion being for six weeks and the other for 30 days.

The petitioner claimed in its return for the year 1920 a deduction for depreciation of said tractor in the sum of $4,205.44 and the Commissioner in determining the deficiency has allowed depreciation in the sum of $1,735.15, being 33⅓ per cent of the cost of said tractor; the remaining cost of said tractor being allowed as depreciation in subsequent years at the same rate.

### OPINION.

Love: The petitioner contends that the respondent erred in disallowing as a deduction from gross income for the year 1920 the amount of $2,470.29 of the total amount of $4,205.44, taken as depreciation on a tractor owned by it and used in its business.   In sup-

port of its contention the petitioner urges that the tractor had in fact depreciated in the amount of $4,205.44, during the seven months of the year 1920, while it was used in its lumber business, and it further urges that, if the tractor had not in fact depreciated to the extent alleged, then the petitioner suffered in the year 1920 on account of the loss of useful value of the tractor, a loss in the amount of $4,205.44, being the difference between the cost thereof and the estimated salvage value of $1,000.

With respect to the petitioner's claim that the tractor had in fact depreciated to the extent of its alleged salvage value, we must hold that the facts do not substantiate that contention. The amount of $2,000 expended for repairs on the tractor during 1920, the year of purchase, was of course, a proper deduction as a business expense. According to the undisputed facts in the year 1922, the amount of $1,100 if expended for repairs would have put the tractor in proper operating shape. If, then, this amount would have restored it to proper shape in 1922, two years after it is claimed that the tractor had depreciated in the amount alleged, we can not agree that it had depreciated in an amount of approximately four-fifths of its cost in the first year of use. There is nothing to show that, in connection with the repairs made on it, its life would have been less than three years, the life placed on it by the respondent for the purpose of depreciation. The mere fact that the then market value of the tractor had decreased materially does not in any way substantiate the contention that the tractor had in fact depreciated to its estimated salvage value. We therefore approve the action of the Commissioner in this respect.

Considering the petitioner's contention that by reason of the loss of useful value of the tractor it suffered a loss in 1920 of the amount of $4,205.44, if depreciation was not sustained in that amount, we must hold that, in our opinion, the facts do not support that contention.

We have heretofore held that when capital assets of a business are discarded as a result of changes in business conditions, the petitioner may deduct in such year the difference between the depreciated cost and the salvage value of the assets discarded. *Appeal of Dilling Cotton Mills*, 2 B. T. A. 127; *Appeal of Automatic Transportation Co.*, 3 B. T. A. 505; *Appeal of Sheridan Coal Co.*, 4 B. T. A. 563. In each of those appeals, the Board found it to be a fact that such capital assets were discarded permanently.

As stipulated in this proceeding the tractor alleged to have been abandoned in the year 1920, was again used in the succeeding year as a stationary power plant. The facts conclusively show that the tractor had not become obsolete, as that term is accepted, but that on account of a decline in the price of lumber in 1920 it was no

longer profitable to use the tractor for hauling logs. The subsequent use of the tractor in 1921 for a purpose for which it was properly fitted, precludes us from holding that it had lost its useful value in the year 1920.

The determination of the respondent in allowing depreciation at the rate of 33⅓ per cent annually on the cost of the tractor is therefore approved.

*Judgment will be entered for the respondent.*

Considered by TRUSSELL and LITTLETON.